KAREN P. HEWITT
United States Attorney
STEWART M. YOUNG
Assistant U.S. Attorney
California State Bar No. 234889
United States Attorney's Office
Federal Office Building
880 Front Street, Room 6293
San Diego, California  92101-8893
Telephone: (619) 557-6228
Fax: (619) 235-2757
Email: stewart.young@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CRIMINAL CASE NO. 08-CR-1364 DMS |
| | ) | |
| | ) | DATE:        August 15, 2008 |
| Plaintiff, | ) | TIME:        11:00 A.M. |
| | ) | |
| v. | ) | GOVERNMENT'S RESPONSE AND OPPOSITION TO DEFENDANT'S MOTIONS |
| | ) | |
| | ) | [12-1] COMPEL DISCOVERY; |
| DAVID JOSEPH MEDINA, | ) | |
| | ) | TOGETHER WITH A STATEMENT OF THE FACTS AND THE MEMORANDUM OF |
| Defendant. | ) | POINTS AND AUTHORITIES, AND GOVERNMENT'S MOTIONS FOR: |
| | ) | |
| | ) | |
| | ) | [1] RECIPROCAL DISCOVERY |
| | ) | |
| | ) | |

COMES NOW, the plaintiff, UNITED STATES OF AMERICA, by and through its counsel, KAREN P. HEWITT, United States Attorney, and Stewart M. Young, Assistant United States Attorney, hereby files its Response and Opposition to Defendant's Motion to Compel Discovery, and its Motion for Reciprocal Discovery.  This response and motion is based upon the files and records of the case together with the attached statement of facts and memorandum of points and authorities.

# I

## STATEMENT OF THE CASE

On April 30, 2008, the Government filed a two-count indictment charging David Joseph Medina ("Defendant") with violating 21 U.S.C. §§ 952 and 960, importation of 1.86 kilograms of marijuana, and 21 U.S.C. § 841(a)(1), possession of 1.86 kilograms of marijuana with intent to distribute.   On May 1, 2008, Defendant was arraigned on the Indictment and entered a plea of not guilty.

# II

## STATEMENT OF FACTS

On April 2, 2008, at approximately 11:10 pm, Defendant entered the United States through the Calexico, California, West Port of Entry.  He entered through the pedestrian lane and gave two negative declarations at that time.  He stated that he had traveled to Mexico to visit his family, and when asked where specifically, he hesitated.  The Customs and Border Protection Officer noticed a bulge behind defendant's thigh in his baggy pants.  The CBP officer grabbed defendant and defendant attempted to abscond back south to Mexico.  Defendant was escorted to a private area where a patdown search revealed six packages tapped to defendant's thighs.  These packages field-tested positive for marijuana, with a total weight of 1.86 kilograms.

At approximately 12:40 a.m., on April 3, 2008, defendant was read his Constitutional rights in the English language.  He stated that he understood these rights, waived those rights, and stated he was willing to provide a statement.  During that interview, defendant made the following statements: He was doing this as a favor to his girlfriend.  His girlfriend owed money to Robert Luna from Mexicali and that girlfriend asked him to smuggle marijuana to help her out so that Luna and other unknown males would not do anything to her.  He was to leave the marijuana in the bathroom at the Greyhound bus station. An unknown male taped the marijuana to his thighs at a Chinese restaurant in Mexicali.

# III

## THE UNITED STATES' RESPONSE AND OPPOSITION TO DEFENDANT'S MOTION TO COMPEL DISCOVERY ALONG WITH MEMORANDUM OF POINTS AND AUTHORITIES.

The United States has and will continue to fully comply with its discovery obligations under

Brady v. Maryland, 373 U.S. 83 (1963), the Jencks Act (19 U.S.C. § 3500), and Rule 16 of the Federal Rules of Criminal Procedure. The United States has already produced numerous pages of discovery to defense counsel including investigative reports and Defendant's statements. Nevertheless, Defendant makes a series of discovery requests. The following is the United States' response to Defendant's various discovery requests.

**(1) The Defendants' Statements**

The United States recognizes its obligation under Rule 16(a)(1)(A) and 16(a)(1)(B) to provide to Defendant the substance of Defendant's oral statements and Defendant's written statements. The United States has produced all of Defendant's oral and written statements that are known to the undersigned Assistant U.S. Attorney at this date and all available compact discs. If the United States discovers additional written or oral statements that require disclosure under Rule 16(a)(1)(A) or Rule 16(a)(1)(B), such statements will be provided to Defendant.

The United States has no objection to the preservation of the handwritten notes taken by any of the United States' agents and officers. See United States v. Harris, 543 F.2d 1247, 1253 (9th Cir. 1976) (agents must preserve their original notes of interviews of an accused or prospective government witnesses). However, the United States objects to providing Defendant with a copy of any rough notes at this time. Rule 16(a)(1)(A) does not require disclosure of the rough notes where the content of those notes have been accurately reflected in a type-written report. See United States v. Brown, 303 F.3d 582, 590 (5th Cir. 2002); United States v. Coe, 220 F.3d 573, 583 (7th Cir. 2000) (Rule 16(a)(1)(A) does not require disclosure of an agent's notes even where there are "minor discrepancies" between the notes and a report). The United States is not required to produce rough notes pursuant to the Jencks Act, because the notes do not constitute "statements" (as defined under 18 U.S.C. § 3500(e)) unless the notes (1) comprise both a substantially verbatim narrative of a witness' assertion, and (2) have been approved or adopted by the witness. United States v. Spencer, 618 F.2d 605, 606-07 (9th Cir. 1980). The rough notes in this case do not constitute "statements" in accordance with the Jencks Act. See United States v. Ramirez, 954 F.2d 1035, 1038-39 (5th Cir. 1992) (rough notes were not statements under the Jencks Act where notes were scattered and all the information contained in the notes was available in other forms). The notes are not Brady material because the notes do not present any material

exculpatory information, or any evidence favorable to Defendant that is material to guilt or punishment. <u>Brown</u>, 303 F.3d at 595-96 (rough notes not <u>Brady</u> material because the notes were neither favorable to the defense nor material to defendant's guilt or punishment); <u>United States v. Ramos</u>, 27 F.3d 65, 71 (3d Cir. 1994) (mere speculation that agents' rough notes contained <u>Brady</u> evidence was insufficient). If, during a future evidentiary hearing, certain rough notes become discoverable under Rule 16, the Jencks Act, or <u>Brady</u>, the notes in question will be provided to the Defendant.

### (2) Arrest Reports, Notes and Dispatch Tapes

The United States has provided the Defendant with arrest reports. As noted previously, agent rough notes, if any exist, will be preserved, but they will not be provided as part of Rule 16 discovery. The United States is unaware of any dispatch tapes regarding Defendant's apprehension, but has requested the Border Patrol to preserve these if they do exist. If the United States becomes aware of such dispatch tapes, and those tapes fall under Rule 16 discovery obligations, the United States will provide those tapes.

### (3) Brady Material

Again, the United States is well aware of and will continue to perform its duty under <u>Brady v. Maryland</u>, 373 U.S. 83 (1963), and <u>United States v. Agurs</u>, 427 U.S. 97 (1976), to disclose exculpatory evidence within its possession that is material to the issue of guilt or punishment. Defendant, however, is not entitled to all evidence known or believed to exist which is, or may be, favorable to either of the accused, or which pertains to the credibility of the United States' case. As stated in <u>United States v. Gardner</u>, 611 F.2d 770 (9th Cir. 1980), it must be noted that "the prosecution does not have a constitutional duty to disclose every bit of information that might affect the jury's decision; it need only disclose information favorable to the defense that meets the appropriate standard of materiality." <u>Id.</u> at 774-775 (citation omitted).

The United States will turn over evidence within its possession which could be used to properly impeach a witness who has been called to testify.

Although the United States will provide conviction records, if any, which could be used to impeach a witness, the United States is under no obligation to turn over the criminal records of all witnesses. <u>United States v. Taylor</u>, 542 F.2d 1023, 1026 (8th Cir. 1976). When disclosing such

1    information, disclosure need only extend to witnesses the United States intends to call in its case-in-
2    chief. United States v. Gering, 716 F.2d 615, 621 (9th Cir. 1983); United States v. Angelini, 607 F.2d
3    1305, 1309 (9th Cir. 1979).

4        Finally, the United States will continue to comply with its obligations pursuant to United States
5    v. Henthorn, 931 F.2d 29 (9th Cir. 1991).

6        **(4) Sentencing Information**

7        Defendant claims that the United States must disclose any information affecting Defendant's
8    sentencing guidelines because such information is discoverable under Brady v. Maryland, 373 U.S. 83
9    (1963). The United States respectfully contends that it has no such disclosure obligation under Brady.

10       The United States is not obligated under Brady to furnish a defendant with information which
11   he already knows. United States v. Taylor, 802 F.2d 1108, 1118 n.5 (9th Cir. 1986). Brady is a rule of
12   disclosure, and therefore, there can be no violation of Brady if the evidence is already known to the
13   defendant. In such case, the United States has not suppressed the evidence and consequently has no
14   Brady obligation. See United States v. Gaggi, 811 F.2d 47, 59 (2d Cir. 1987).

15       But even assuming Defendant does not already possess the information about factors which
16   might affect their guideline ranges, the United States would not be required to provide information
17   bearing on Defendant's mitigation of punishment until after Defendant's convictions or pleas of guilty
18   and prior to their sentencing dates. See United States v. Juvenile Male, 864 F.2d 641, 647 (9th Cir.
19   1988) ("No [Brady] violation occurs if the evidence is disclosed to the defendant at a time when the
20   disclosure remains in value."). Additionally, the United States is unaware of any cooperation, or even
21   attempted cooperation, provided by Defendant. Accordingly, Defendant's demand for this information
22   is premature.

23       **(5) Defendant's Prior Record**

24       The United States will provide the Defendant with a copy of his criminal record in accordance
25   with Federal Rule of Criminal Procedure 16(a)(1)(B).

26       **(6) Proposed 404(b) and 609 Evidence**

27       Should the United States seek to introduce any similar act evidence pursuant to Federal Rules
28   of Evidence 404(b) or 609, the United States will provide Defendant with official notice of its proposed

1  use of such evidence and information about such bad act at the time the United States' trial

2  memorandum is filed.

3  **(7) Evidence Seized**

4  The United States has complied and will continue to comply with Rule 16(a)(1)(C) in allowing

5  Defendant an opportunity, upon reasonable notice, to examine, copy and inspect physical evidence which

6  is within the possession, custody or control of the United States, and which is material to the preparation

7  of Defendant's defense or are intended for use by the United States as evidence in chief at trial, or were

8  obtained from or belong to Defendant, including photographs.

9  The United States, however, need not produce rebuttal evidence in advance of trial.  United

10  States v. Givens, 767 F.2d 574, 584 (9th Cir. 1984), cert. denied, 474 U.S. 953 (1985).

11  **(8) Preservation of Evidence**

12  The United States will preserve all evidence to which Defendant are entitled pursuant to the

13  relevant discovery rules.  However, the United States objects to any blanket request to preserve all

14  physical evidence.  This appears moot, however, given that it appears this Court has already ruled on

15  Defendant's request to preserve the evidence.

16  The United States has complied and will continue to comply with Rule 16(a)(1)(C) in allowing

17  Defendant an opportunity, upon reasonable notice, to examine, copy and inspect physical evidence which

18  is within his possession, custody or control of the United States, and which is material to the preparation

19  of Defendant's defenses or intended for use by the United States as evidence in chief at trial, or obtained

20  from or belong to Defendant, including photographs.  The United States has made the evidence available

21  to Defendant and his investigators and will comply with any request for inspection.

22  **(9) Henthorn Evidence**

23  Again, as stated in Section III(3) of this Response, the United States will continue to comply with

24  its obligations pursuant to United States v. Henthorn, 931 F.2d 29 (9th Cir. 1991).

25  **(10) Tangible Objects**

26  The United States has complied and will continue to comply with Rule 16(a)(1)(E) in allowing

27  Defendant an opportunity, upon reasonable notice, to examine, inspect, and copy all tangible objects

28  seized that is within its possession, custody, or control, and that is either material to the preparation of

1  Defendant's defense, or intended for use by the United States as evidence during its case-in-chief at trial,

2  or obtained from or belongs to Defendant.   The United States need not, however, produce rebuttal

3  evidence in advance of trial.  United States v. Givens, 767 F.2d 574, 584 (9th Cir. 1984).  The United

4  States

5  ### **(11) Expert Witnesses**

6  The United States will comply with Rule 16(a)(1)(G) and provide Defendant with a written

7  summary of any expert testimony that the United States intends to use under Rules 702, 703, or 705 of

8  the Federal Rules of Evidence during its case-in-chief at trial.  This summary shall include the expert

9  witnesses' qualifications, the expert witnesses opinions and the bases and reasons for those opinions.

10  ### **(12) Impeachment Evidence**

11  As stated previously, the United States will turn over evidence within its possession which could

12  be used to properly impeach a witness who has been called to testify.

13  ### **(13) Criminal Investigation of Government Witness**

14  Defendant is not entitled to any evidence that a prospective witness is under criminal

15  investigation by federal, state, or local authorities.   "[T]he criminal records of such [Government]

16  witnesses are not discoverable." United States v. Taylor, 542 F.2d 1023, 1026 (8th Cir. 1976); United

17  States v. Riley, 657 F.2d 1377, 1389 (8th Cir. 1981) (holding that since criminal records of prosecution

18  witnesses are not discoverable under Rule 16, rap sheets are not either); cf. United States v. Rinn, 586

19  F.2d 113, 118-19 (9th Cir. 1978) (noting in dicta that "[i]t has been said that the Government has no

20  discovery obligation under Fed. R. Crim. P. 16(a)(1)(C) to supply a defendant with the criminal records

21  of the Government's intended witnesses.") (citing Taylor, 542 F.2d at 1026).

22  The United States will, however, provide the conviction record, if any, which could be used to

23  impeach witnesses the United States intends to call in its case-in-chief.   When disclosing such

24  information, disclosure need only extend to witnesses the United States intends to call in its case-in-

25  chief.  United States v. Gering, 716 F.2d 615, 621 (9th Cir. 1983); United States v. Angelini, 607 F.2d

26  1305, 1309 (9th Cir. 1979).

27  ### **(14) Evidence of Bias or Motive to Lie**

28  The United States is unaware of any evidence indicating that a prospective witness is biased or

7

prejudiced against Defendant.  The United States is also unaware of any evidence that prospective

witnesses have a motive to falsify or distort testimony.

### (15) Evidence Affecting Perception, Recollection, Communication or Truth-Telling

The United States is unaware of any evidence indicating that a prospective witness has a problem

with perception, recollection, communication, or truth-telling.

### (16) Witness Addresses

The United States has provided Defendant with the reports containing the names of the agents

involved in the apprehension and interviews of Defendant.  A defendant in a non-capital case, however,

has no right to discover the identity of prospective Government witnesses prior to trial.  See Weatherford

v. Bursey, 429 U.S. 545, 559 (1977); United States v. Dishner, 974 F.2d 1502, 1522 (9th Cir 1992)

(citing United States v. Steel, 759 F.2d 706, 709 (9th Cir. 1985)); United States v. Hicks, 103 F.23d 837,

841 (9th Cir. 1996).   Nevertheless, in its trial memorandum, the United States will provide Defendants

with a list of all witnesses whom it intends to call in its case-in-chief, although delivery of such a witness

list is not required.  See United States v. Discher, 960 F.2d 870 (9th Cir. 1992); United States v. Mills,

810 F.2d 907, 910 (9th Cir. 1987).

The United States objects to any request that it provide a list of every witness to the crimes

charged who will not be called as a United States witness.  "There is no statutory basis for granting such

broad requests," and a request for the names and addresses of witnesses who will not be called at trial

"far exceed[s] the parameters of Rule 16(a)(1)(C)."  United States v. Hsin-Yung, 97 F. Supp.2d 24, 36

(D. D.C. 2000) (quoting United States v. Boffa, 513 F. Supp. 444, 502 (D. Del. 1980)).  The United

States is not required to produce all possible information and evidence regarding any speculative defense

claimed by Defendants.  Wood v. Bartholomew, 516 U.S. 1, 6-8 (1995) (per curiam) (holding that

inadmissible materials that are not likely to lead to the discovery of admissible exculpatory evidence are

not subject to disclosure under Brady).

### (17) Name of Witnesses Favorable to the Defense

The United States objects to any request that it provide a list of every witness to the crimes

charged who will not be called as a United States witness.  The United States has stated that it will

comply with the request for its witness list before trial.  "There is no statutory basis for granting such

broad requests," and a request for the names and addresses of witnesses who will not be called at trial "far exceed[s] the parameters of Rule 16(a)(1)(C)." United States v. Hsin-Yung, 97 F. Supp.2d 24, 36 (D. D.C. 2000) (quoting United States v. Boffa, 513 F. Supp. 444, 502 (D. Del. 1980)). The United States is not required to produce all possible information and evidence regarding any speculative defense claimed by Defendants. Wood v. Bartholomew, 516 U.S. 1, 6-8 (1995) (per curiam) (holding that inadmissible materials that are not likely to lead to the discovery of admissible exculpatory evidence are not subject to disclosure under Brady). The United States will also comply with its discovery obligations regarding any exculpatory evidence that it might become aware of regarding the defendant. But absent these obligations, the United States is unaware of any witness that may be favorable to the defendant.

As stated previously, the United States will turn over evidence within its possession which could be used to properly impeach a witness who has been called to testify.

### (18) Statements Relevant to the Defense

The United States will continue to comply with its obligations under Brady, Jencks, Giglio, and Rule 16, as pertains to any statement relevant to the defense. However, the United States objects to the broad nature of this request for "any statement that may be 'relevant to any possible defense or contention.'"

### (19) Jencks Act Material

The Jencks Act, 18 U.S.C. § 3500, requires that, after a United States witness has testified on direct examination, the United States must give the Defendant any "statement" (as defined by the Jencks Act) in its possession that was made by the witness relating to the subject matter to which the witness testified. 18 U.S.C. § 3500(b). A "statement" under the Jencks Act is (1) a written statement made by the witness and signed or otherwise adopted or approved by him, (2) a substantially verbatim, contemporaneously recorded transcription of the witness's oral statement, or (3) a statement by the witness before a grand jury. 18 U.S.C. § 3500(e). If notes are read back to a witness to see whether or not the government agent correctly understood what the witness was saying, that act constitutes "adoption by the witness" for purposes of the Jencks Act. United States v. Boshell, 952 F.2d 1101, 1105 (9th Cir. 1991) (citing Goldberg v. United States, 425 U.S. 94, 98 (1976)). While the United States is only required to produce all Jencks Act material after the witness testifies, the United States plans to

1   provide most (if not all) Jencks Act material well in advance of trial to avoid any needless delays.

2       Additionally, the United States anticipates that no witness who testified before the grand jury will

3   testify at trial, so the United States does not anticipate that it will have to provide any of the Grand Jury

4   transcripts to Defendant.

5       **(20) Giglio Information**

6       As stated previously, the United States will comply with its obligations pursuant to <u>Brady v.</u>

7   <u>Maryland</u>, 373 U.S. 83 (1963), the Jencks Act, <u>United States v. Henthorn</u>, 931 F.2d 29 (9th Cir. 1991),

8   and <u>Giglio v. United States</u>, 405 U.S. 150 (1972).

9       **(21) Agreements Between the Government and Witnesses**

10      The United States is unaware of any agreement between it and any cooperating witnesses, who

11  have committed crimes, but were not charged, so that they may testify for the Government in this case.

12  The United States will comply with all of its obligations under <u>Brady</u>, <u>Giglio</u>, Jencks Act, and Rule 16,

13  regarding any potential cooperating witness, including any of the material witnesses. Again, at this time,

14  the United States is unaware of any agreement between any of these potential witnesses, but will provide

15  any relevant and pertinent information if such an agreement arises**.**

16      **(22) Informants and Cooperating Witnesses**

17      If the Government determines that there is a confidential informant whose identity is "relevant

18  and helpful to the defense of an accused, or is essential to a fair determination of a cause," it will disclose

19  that person's identity to the Court for in-chambers inspection. <u>See Roviaro v. United States</u>, 353 U.S.

20  53, 60-61 (1957); <u>United States v. Ramirez-Rangel</u>, 103 F.3d 1501, 1505 (9th Cir. 1997).

21      The United States has already stated it will comply with its <u>Brady</u>, <u>Giglio</u>, Jencks Act, and further

22  Rule 16 discovery obligations. The United States will comply with the structure of <u>Roviaro</u> if it

23  determines that any confidential informant information is "relevant and helpful to the defense of [the]

24  accused, or is essential to the fair determination of a cause." <u>Roviaro</u>, 353 U.S. at 60.

25      As the Court is aware, the Supreme Court has declined to adopt an absolute rule requiring

26  disclosure of an informant's identity whenever it is relevant or helpful to a defendant's case. <u>See</u>

27  <u>Roviaro v. United States</u>, 353 U.S. at 62. Indeed, as the D.C. Circuit stated in <u>United States v. Skeens</u>,

28  449 F.2d 1066, 1071 (D.C. Cir.1971), a "heavy burden ... rests on an accused to establish that the identity

of an informant is necessary to his defense." Id. at 1070. "Mere speculation" that an informant's testimony may assist the defendant is not sufficient to meet this burden. United States v. Mangum, 100 F.3d 164, 172 (D.C. Cir.1996). In determining whether the Defendant has met this burden, the Court must balance "the public interest in protecting the flow of information against the individual's right to prepare his defense," all the while "taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors." Roviaro, 353 U.S. at 62. The United States will comply with its Rovario obligations, but it also requests that any information provided to the Defendants be subject to in camera review by the Court.

### (23) Bias by Informants or Cooperating Witnesses

As stated previously, the United States is unaware of any evidence indicating that any prospective witness, whether Government agent, Informant, or Cooperating Witness, is biased or prejudiced against Defendant. The United States is also unaware of any evidence that prospective witnesses, whether Government agent, Informant, or Cooperating Witness, have a motive to falsify or distort testimony. It will comply with its Giglio obligations if it becomes aware of any indication of bias on behalf of any of these witnesses.

### (24) Henthorn Evidence and Personnel Records of Government Officers Involved in the Arrest

The United States will continue to comply with its obligations pursuant to United States v. Henthorn, 931 F.2d 29 (9th Cir. 1991).

Defendant cites a California Supreme Court case from 1974 for the proposition that he is entitled to "all citizen complaints and other related internal affairs documents involving any of the immigration officers or other law enforcement officers who were involved . . . ." In fact, Pitchess v. Superior Court, 11 Cal. 3d 531, 539 (1974), has been superseded by statute. The legislature's aim in enacting the statute, as described the California Supreme Court, was "to protect such records against 'fishing expeditions' conducted by defense attorneys following the Pitchess decision." City of San Jose v. Superior Court, 5 Cal.4th 47, 54 (1993).

The controlling federal law is United States v. Henthorn, 931 F.2d 29 (9th Cir. 1991), and the Government, as stated, will continue to comply with those obligations.

08-CR-1364 DMS

### (25) Training of Border Patrol and DEA Agents

Defendant requests copies of any and all written policies and/or training manuals issued by the Department of Homeland Security or the Drug Enforcement Administration regarding issues in this case. The United States opposes such a broad-based request and cannot find any basis in Rule 16, <u>Brady</u>, <u>Giglio</u>, or the Jenks Act for this request. Accordingly, absent a showing for the need for this information, the United States opposes any such request by the defendant.

### (26) Performance Goals and Policy Awards

As with the above request, the United States opposes such a broad-based request and cannot find any basis in Rule 16, <u>Brady</u>, <u>Giglio</u>, or the Jenks Act for this request. Accordingly, absent a showing for the need for this information, the United States opposes any such request by the defendant.

### (27) Opportunity to Weigh, View and Photograph the Contraband

The United States does not oppose the motion to view and photograph the contraband. The United States does take issue with the re-weigh absent a demonstration by Defendant as to the necessity for this re-weigh. Given that the Court apparently has already ruled on this motion, the request appears to be moot.

### (28) Reports of Scientific Tests or Examination

The United States will provide the results of any reports of scientific tests or examinations, should any be conducted. At this time, the United States is aware of no tests or examinations which are material to the preparation of the defense or are intended for use by the United States at trial.

### (29) Residual Request

The United States has already complied with Defendants' request for prompt compliance with its discovery obligations prior to Indictment. The United States will continue to comply with all of its discovery obligations, but objects to the broad nature of Defendant's further discovery requests.

**IX**

**MOTION FOR RECIPROCAL DISCOVERY**

The United States hereby moves for reciprocal discovery from the Defendant. To date Defendant has not provided any. The United States, pursuant to Rule 16 of the Federal Rules of Criminal Procedure, requests that Defendant permit the United States to inspect, copy, and photograph any and

all books, papers, documents, photographs, tangible objects, or make copies of portions thereof, which are within the possession, custody or control of Defendant and which Defendant intends to introduce as evidence in their case-in-chief at trial.

The United States further requests that it be permitted to inspect and copy or photograph any results or reports of physical or mental examinations and of scientific tests or experiments made in connection with this case, which are in the possession or control of Defendant, which Defendant intend to introduce as evidence-in-chief at the trial, or which were prepared by a witness whom Defendant intends to call as a witness. Because the United States will comply with Defendant's request for delivery of reports of examinations, the United States is entitled to the items listed above under Rule 16(b)(1) of the Federal Rules of Criminal Procedure. The United States also requests that the Court make such order as it deems necessary under Rules 16(d)(1) and (2) to ensure that the United States receives the discovery to which it is entitled.

In addition, Rule 26.2 of the Federal Rules of Criminal Procedure requires the production of prior statements of all witnesses, except a statement made by Defendant. This rule thus provides for the reciprocal production of <u>Jencks</u> statements. The time frame established by the rule requires the statement to be provided after the witness has testified. To expedite trial proceedings, the United States hereby requests that Defendant be ordered to supply all prior statements of defense witnesses by a reasonable date before trial to be set by the Court. Such an order should include any form in which these statements are memorialized, including but not limited to, tape recordings, handwritten or typed notes and/or reports.

13

IV

## CONCLUSION

For the above stated reasons, the United States respectfully submits its Response and Opposition to Defendant's Motions for Discovery, and requests that its Motion for Reciprocal Discovery be granted.

DATED: July 24, 2008.

Respectfully Submitted,

KAREN P. HEWITT
United States Attorney


s/Stewart M. Young
STEWART M. YOUNG
Assistant U.S. Attorney
Email: stewart.young@usdoj.gov

14

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Criminal Case No. 08-CR-1364 DMS |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CERTIFICATE OF SERVICE |
| | ) | |
| DAVID JOSEPH MEDINA, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

IT IS HEREBY CERTIFIED THAT:

I, Stewart M. Young, am a citizen of the United States and am at least eighteen years of age. My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.

I am not a party to the above-entitled action. I have caused service of the United States' Response and Opposition to Defendant's Motions, as well as the Government's Motion for Reciprocal Discovery on the following parties by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

1. John Lemon, Esq.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on July 24, 2008

s/ *Stewart M. Young*
Stewart M. Young